## ACME TIRE & VULCANIZING CO. et al. v. NATIONAL CASH REGISTER CO.
### (No. 8061.)

(Court of Civil Appeals of Texas. Galveston. June 14, 1921.)

1. Sales ⬤�ically261(5)—Representations as to mechanical performance are representations of fact.

Representations by a salesman that a cash register would add, subtract, and segregate items cannot be regarded as mere trade talk, but are representations, which, if false, invalidate a contract for the purchase of a machine induced by such misrepresentations.

2. Evidence ⬤⟫434(8)—Proof of fraud in procurement of written contract does not violate parol evidence rule.

Proof of fraudulent misrepresentations in the procurement of a written contract is not an infringement upon the rule prohibiting parol evidence to vary the terms of a written instrument.

3. Evidence ⬤⟫434(11)—Oral agreement for 30-day test is admissible in corroboration of fraud in procurement of written contract.

Even if an oral agreement that the buyer of a cash register should have the privilege of a trial test for 30 days was inadmissible to vary the terms of a written contract of sale, it was admissible in corroboration of buyer's claim that the written contract was procured by fraudulent misrepresentations.

Appeal from Harris County Court; John W. Lewis, Judge.

Action by the National Cash Register Company against the Acme Tire & Vulcanizing Company and others. Judgment for the plaintiff, and defendants appeal. Reversed and remanded.

J. L. Meany, of Houston, for appellants.
Campbell, Myer & Freeman and W. Ray Scruggs, all of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by the appellee aganist the Acme Tire & Vulcanizing Company as a partnership, and against the individual members of said firm, to recover upon a promissory note for the sum of $420 executed by the defendants in favor of plaintiff on the 1st day of May,

---

⬤⟫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

1919, and payable in monthly installments of $30 each, and to foreclose a mortgage lien given by defendants to secure the payment of said note upon a cash register machine described in the petition.

The defendants' answer admits the execution and delivery of the note and mortgage as alleged by plaintiff, and that it was executed in part payment of the purchase price of the cash register machine described in said mortgage, and which defendants agreed to purchase from plaintiff as alleged in the petition. It is then averred in said answer:

"That the plaintiff did, through its agent and vice principal, W. A. Ryan, fraudulently represent and warrant to the defendants, with knowledge of the falsity of such representation and warranties, that the said described cash register would add, subtract, and segregate their items of sale and purchase without the aid of a' bookkeeper, and that it would in every respect do in the line of their business the work of a bookkeeper, and save them the expense of hiring one; that defendants believed and relied on these representations and guaranties, and that they were to them the moving consideration for the signing and delivery of the said contract and note, and that they would not have either signed or delivered either instrument if the said representations and guaranties had not been made to them by the said Ryan before and at the time of their signing and delivering them.

"That the plaintiff did, through its said agent, Ryan, fraudulently represent to them, prior to and at the signing and delivering of the said contract and note, that they would have 30 days to test the usefulness to them of the said cash register, and that neither instrument would become effectively operative until this 30-day test period would have elapsed, and that because of these representations and their reliance in them they assigned and delivered the said contract and note, which they would not have done if the plaintiff, through its said agent, had not so contracted with them.

"That the written words of the contract pleaded in plaintiff's petition does not contain all of the agreements made and entered into by the plaintiff and themselves at the alleged sale and conditional purchase of the said cash register, and this they allege, because it was, prior to and at the time of the signing and delivery of the said contract and note, between themselves and the plaintiff fully understood and agreed that they would have 30 days to test the usefulness to them of the said cash register, and that the contract and note they so signed and delivered should, by the terms of this agreement, be canceled and held for naught if the cash register should within that time fail to be satisfactory to them.

"That the said Ryan did, as a further inducement to them, prior to and at the signing and delivery of the said contract and note, fraudulently represent that it was the custom of the plaintiff to give purchasers of its cash registers a 30-day test period, and that it was also the custom of the plaintiff, but only as a matter of form, to get on any such sale a small cash payment and a contract and note, but that such cash paid would be promptly repaid, and the contract and note canceled at the return of any such machine within this 30-day test period, and they now allege that they believed these statements to be true, and relied on them, and that they would not, if they had not believed and relied on them, have signed and delivered the said contract and note.

"That the defendants had never had a cash register, and that they were therefore wholly unfamiliar with the mechanical ability of the operations of the cash register they were buying, and that they believed the plaintiff's agent, Ryan, to be thoroughly conversant with the workings and mechanical ability of all of the operatives of this and every cash register, and that, because of so believing in his skill and in the fraudulent statements made by him about the mechanical ability of the cash register, they signed and delivered the said contract and note.

"That the defendants would not in any event have considered the purchase of the cash register if the said Ryan had not represented to them that it would, because of the mechanical ability of its construction, add, subtract, and segregate without the aid of a bookkeeper, and save them the expense of hiring one, and the defendants here now allege that the plaintiff's said agent knew that it was these fraudulent statements, representations, and guaranties he was so making that moved them to sign and deliver the herein pleaded contract and note.

"That the plaintiff's agent, Ryan, said to them prior to and at the conclusion of the contract and at the signing of itself and the note that they would within 30 days learn that his statements about the cash register would prove to be true, and that they would, if it should not show itself within that time to have the very mechanical ability of his representations, or if it should not in all things prove adapted to their business, have the right to return it, and that the contract and note they were signing would be, in that event, canceled and held for naught, and believing all of these statements, and relying upon them, they signed and delivered the said contract and note.

"That the defendants gave the said cash register a fair trial within the said stipulated test time of 30 days, and that they, within that time, learned that it would not add, subtract, and segregate without the aid of a bookkeeper, and that it would not save them the expense of hiring one; that all of the statements herein pleaded to have been made about its mechanical ability by the plaintiff's agent, Ryan, were fraudulently untrue, and that it was not, as by him fraudulently represented, mechanically adapted to their business, and was in fact not the machine which they contracted to purchase, but an entirely different machine.

"That they notified the plaintiff, orally, on the 20th day of May, 1919, of the facts pleaded in this last preceding paragraph, and again on the 29th day of May, 1919, by letter, a copy of which is hereto attached and marked Exhibit A:

" 'Houston, Tex., May 29, 1919.

" 'National Cash Register Company, Houston, Texas, Mr. W. A. Ryan—Dear Sir: On or about the 1st day of May we purchased a cash register from you, with the understanding that, if same did not produce results you claimed in 30 days, we would not accept same.

" 'We find this register is not adapted to our business.

" 'We wish the removal of this register and the termination of our agreement as soon as possible.

    " 'Acme Tire & Vulcanizing Company.
        " '[Signed] C. A. Beck.

" 'Filed September 13, 1920. Albert Townsend, Clerk Co. Court at Law of Harris Co., Tex., by H. H. Branard, Deputy.'

—and that they did in these two notices, and since then, and do now, tender and offer the plaintiff the return of the said cash register, and they further allege that they did at the giving of these notices, and since the giving of them, notify the plaintiff that they wished to terminate and have terminated their contract with it, and they also allege that the plaintiff has, and though demand has been made, refused, and does still refuse, to repay the $30, or any part thereof, paid by them to it at the signing and delivery of the said contract and note.

"The consideration for which the said note was given having therefore wholly failed, and the contract set forth in plaintiff's petition having been made on account of the frauds pleaded in this answer, all of which the defendants are ready to verify, the defendants, now becoming actors, plead the foregoing averments for cross-action and complaint, as though here repeated at length, and, complaining of the plaintiff, pray that the said contract and note be set aside, rescinded, canceled, and held for naught; that they, in law and in equity, have judgment in all things; that the plaintiff take nothing by his suit; and that they have judgment, as their liquidated damages, for the $30 paid to the plaintiff, as herein alleged, and for their costs."

Plaintiffs excepted to this answer and to each of its paragraphs set out above, on the ground that the defendants thereby attempted by parol testimony to vary the terms of the written contract.

These exceptions were sustained by the court, and upon the trial all evidence offered by defendants to establish the averments of the answer was excluded, and the jury instructed to return a verdict for the plaintiff.

These rulings of the trial court are assailed by appellants under appropriate assignments of error, and we think the assignments should be sustained.

[1] The averments of the answer, in effect, are that defendants were induced to execute the contract upon which plaintiff sues by the false representations of plaintiff's agent as to the mechanical construction and capacity of the cash register machine. The representation that the machine could add, subtract, and segregate, as averred in the answer cannot be regarded as mere trade talk, but was a false statement of the existence of a material fact, and when made to one who was ignorant of the true facts, and who, relying upon such representation, was induced to make the contract for the purchase of the machine, was such fraud in the procurement of the contract as to render it unenforceable by the party guilty of the fraud.

[2] Proof of such fraud in the procurement of the contract is not an infringement upon the rule that forbids the introduction of parol evidence to vary the terms of a written instrument. American Law Book Co. v. Fulwiler, 219 S. W. 883; Bridger v. Goldsmith, 143 N. Y. 428, 38 N. E. 458; Trust Co. v. Beck, 167 S. W. 753; Mortgage Co. v. Coe, 166 S. W. 419; Hinkley v. Oil Co., 132 Iowa, 396, 107 N. W. 629, 119 Am. St. Rep. 564; Pratt v. Darling, 125 Wis. 93, 103 N. W. 229.

[3] The averment that the defendants were to have 30 days in which to test the machine, standing alone, might be held an averment varying the terms of the written contract, but when taken in connection with the other averments as to the representation in regard to the capacity of the machine, proof of such agreement might be made in corroboration of the averments of fraud and false representation.

It follows from these conclusions that the judgment of the trial court should be reversed, and the cause remanded, and it has been so ordered.

Reversed and remanded.